IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:14-CR-3089 |
| vs. | ORDER |
| ERIC-ARNAUD BENJAMIN BRIERE DE L'ISLE, | |
| Defendant. | |

    The defendant has filed a motion to continue (filing 39), a motion for leave to file a motion to suppress out of time (filing 40), and a motion to suppress (filing 41). The sole basis for the motion to continue is so that the defendant's motion to suppress may be fully considered.

    The defendant's motion to suppress was filed well out of time, and the defendant has articulated no good cause to excuse the untimely filing. *See* NECrimR 12.3(a); *see also,* Fed. R. Crim. P. 12(c); *United States v. Green,* 691 F.3d 960, 965-66 (8th Cir. 2012); *United States v. Salgado-Campos,* 442 F.3d 684, 685-86 (8th Cir. 2006). Nonetheless, the Court has examined the merits of the defendant's motion to suppress.[1] The Court will, therefore, deny the

---

[1] The Court has elected to decide the motion to suppress without a hearing, because to do otherwise would mean delaying the trial. While the Court will indulge the defendant to the extent of considering his *very* untimely motion to suppress, the Court does so on the condition that the trial not be delayed. The fact that there is no time for a full hearing on the motion is the defendant's doing. Trial was set for October 27, 2014, because at a status conference on September 29, defense counsel stated he and the defendant were ready for trial. Defense counsel stated, and the defendant confirmed, that the defendant intended to go to trial, and the defendant was not going to stipulate to anything. Counsel were reminded that the Court needed to arrange French interpreters for the trial; an undertaking that is time-consuming, difficult, and would likely extend the length of the trial itself. In sum, trial was set on the insistence and assurance of the defendant and his counsel that the case should proceed. Filing 29. The Court and the government have made extensive preparations based on those representations. The Court is not willing to upset them in order to accommodate the last-minute epiphany of defendant's counsel when the Court is convinced, based on the law, that the defendant's motion lacks merit. The alternative to summarily deciding the motion to suppress would simply be denying it as untimely.

motion to continue, and grant the motion for leave to file out of time, but for the reasons explained below, will deny the motion to suppress.

The defendant is charged with possessing counterfeit or unauthorized access devices with intent to defraud—or, more specifically, with possessing counterfeit credit, debit, and gift cards. He has moved to suppress information obtained by law enforcement from scanning the magnetic strips on the back of those cards. *See* filing 42. It is important to note that the defendant does *not* challenge the events leading up to that alleged "search": he does not question the constitutional validity of the traffic stop or his detention, the search of his vehicle and the duffle bag in which the cards were found, or his arrest. His motion is limited to a Fourth Amendment challenge to law enforcement's purported "search" of the magnetic strip on the back of each card, and the Court's analysis is similarly limited.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The ultimate touchstone of the Fourth Amendment is reasonableness. *Riley v. California*, 134 S. Ct. 2473, 2482 (2014). Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, reasonableness generally requires the obtaining of a judicial warrant. *Id.* In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement. *Id.*

But the initial question is whether a "search" was conducted for Fourth Amendment purposes. For instance, a Fourth Amendment search may occur when the government gains evidence by physically intruding into constitutionally-protected areas, such as a home. *See Florida v. Jardines*, 133 S. Ct. 1409, 1417 (2013). And a search may occur when the government violates a subjective expectation of privacy that society recognizes as reasonable. *United States v. Jones*, 132 S. Ct. 945, 954-55 (2012) (Sotomayor, J., concurring) (citing *Kyllo v. United States*, 533 U.S. 27 (2001); *Smith v. Maryland*, 442 U.S. 735 (1979); *Katz v. United States*, 389 U.S. 347 (1967)); *see Jardines*, 133 S. Ct. at 1417 (the *Katz* reasonable-expectations test has been added to, not substituted for, a property-based understanding of the Fourth Amendment). But official conduct that does not compromise any

legitimate interest in privacy is not a search subject to the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

The court in *United States v. Alabi*, 943 F. Supp. 2d 1201 (D.N.M. 2013), concluded (on effectively identical facts to this case) that no search had occurred when law enforcement read the magnetic strips on the back of fraudulent credit cards, because it involved neither a physical intrusion nor any violation of a reasonable expectation of privacy. *See also United States v. Medina*, 2009 WL 3669636 (S.D. Fla. 2009), *adopted in part and rejected in part on other grounds sub nom*, *United States v. Duarte*, 2009 WL 3669537 (S.D. Fla. 2009). The Court is persuaded by the *Alabi* court's thoughtful and comprehensive reasoning, and likewise concludes that a Fourth Amendment search is not present here.

To begin with, a scan of magnetically-coded information on a credit or debit card does not involve a physical intrusion into a constitutionally-protected area. "[R]eading and displaying virtual data encoded on a track does not involve any physical invasion or penetration of space." *Alabi*, 943 F. Supp. 2d at 1265. Nor, when the card is already in the physical possession of the person scanning it, is the magnetic strip a constitutionally-protected area.

> All of the enumerated constitutionally protected areas—homes, persons, papers and effects—are areas in which a person may keep information that he or she wishes to keep private, which a person should expect to be secure from arbitrary government intrusion, and thus areas in which the Framers required probable cause to subject them to law enforcement disclosure. Credit and debit cards' magnetic strips are not areas in which an average person would store information that he or she wishes to keep private. Credit cards and debit cards, unlike a person's personal effects such as luggage or a wallet, are not meant to contain things or information which a person may wish to keep secure, but rather contain the information that the financial institution which issued the card to the cardholder placed there— the account information embossed on the front of the card. A person may wish to keep the contents of his or her luggage secure from arbitrary police interference, because, while the outside of the bag may not seem private, a person may store any number of private things within. A person may also have an interest in keeping the contents of a wallet secure, because the person may not wish to disclose information contained within, such as a social security card, family photographs, or even account

> information found on the outside of his or her credit and debit cards. In contrast, a credit or debit card's magnetic strip cannot contain anything except a limited number of alphanumeric characters. Moreover, rather than expecting this information and these characters to remain secure from disclosure, credit and debit cards are issued solely for the purpose of disclosing the information when using the card, so that the person using the card may purchase the goods. In contrast to such private, personal effects which are constitutionally protected areas, the evidence in the case shows that, with regard to the alphanumeric characters on credit and debit cards' magnetic strips, in all but criminal circumstances, once law enforcement have lawful possession of a person's credit or debit card, the information in the cards' magnetic strips has already been disclosed to the officers.

*Id.* at 1270. Examining such a card is, instead, analogous to examining coins or currency to determine whether they are counterfeit—activity which is well understood to be consistent with the Fourth Amendment, if the money is already lawfully in government hands. *See*, *id.* at 1272-73; *Medina*, 2009 WL 3669636, at *10.

Similarly—even assuming that the defendant could show a subjective expectation of privacy in the magnetically-encoded information on the cards, *see Alabi*, 943 F. Supp. 2d at 1275—that expectation is not one that society is prepared to accept as legitimate.[2] Society is not prepared to accept as legitimate an asserted privacy interest in information that any member of the public may see. *Id.* at 1276 (citing *California v. Ciraolo*, 476 U.S. 207 (1986)).

It is true that when information within an area or item has not been exposed to public view, and when investigating the contents may reveal information other than information about criminal activity only, the investigation of the area or item may be a Fourth Amendment search. *Id.* at 1277. But, for instance, the Supreme Court has held that a chemical test of white powder found in a damaged package was not a Fourth Amendment search because it did not reveal any information that was not already known to law enforcement, other than whether the substance was cocaine. *United States v. Jacobsen*, 466 U.S. 109, 120 (1984). The additional intrusion, the Supreme Court explained, "could disclose only one fact previously unknown

---

[2] To find a subjective expectation of privacy, the Court would need to believe that the defendant never intended to reveal the information encoded on the magnetic strip—that is, that he never intended to use the cards, despite his name being on them. That is a dubious proposition, but the Court will give the defendant the benefit of the (minimal) doubt. *See id.*

- 4 -

to the agent—whether or not a suspicious white powder was cocaine. It could tell him nothing more, not even whether the substance was sugar or talcum powder." *Id.* at 122. And a test

> that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy. This conclusion is not dependent on the result of any particular test. It is probably safe to assume that virtually all of the tests conducted under circumstances comparable to those disclosed by this record would result in a positive finding; in such cases, no legitimate interest has been compromised. But even if the results are negative—merely disclosing that the substance is something other than cocaine—such a result reveals nothing of special interest.

*Id.* at 122-24. An interest in possessing contraband cannot be deemed legitimate, and thus government conduct that only reveals the possession of contraband compromises no legitimate privacy interests, because the expectation that certain facts will not come to the attention of law enforcement is not an interest in privacy that society is prepared to consider reasonable. *See*, *Caballes,* 543 U.S. at 408-09; *Jacobsen,* 466 U.S. at 122-23.

This case presents an intersection of those principles—that is, between the principle that there is no legitimate privacy interest in already-known information, and that there is no legitimate privacy interest in contraband. And "[a] privacy expectation in the account information stored on credit and debit cards' magnetic strips—separate and beyond the credit and debit cards themselves—is not objectively reasonable." *Alabi,* 943 F. Supp. 2d at 1280. Scanning a card to read the account information reveals only the same information that would be revealed in a private search when the card was used as intended. *Id.* at 1281; *see Medina,* 2009 WL 3669636, at *10-11. And the only time the account-holder's information (as opposed to such details as the lender's routing information) would not also be revealed by a cursory examination of the surface of the card would be when it was inconsistent— that is, when the card was counterfeit and contraband. *Alabi,* 943 F. Supp. 2d at 1282; *see Medina,* 2009 WL 3669636, at *10.

Nor does the Court believe that the Supreme Court's recent decision in *Riley,* 134 S. Ct. 2473, offers any reason to doubt that conclusion. In *Riley*, the Supreme Court held that a search incident to arrest does not permit law enforcement to search the contents of the suspect's cell phone without a warrant. *Id.* at 2485. But to begin with, in *Riley*, it does not appear to have been disputed that the searches at issue were, in fact, searches. Both

searches involved activating suspects' cell phones and working through their menus to obtain personal information. *Id.* at 2477. But more critically, the Court's reasoning in *Riley* rested in large measure on the quantity and quality of personal information that can be obtained from a modern smartphone, and the expectation of privacy that an individual may have in such information. *See id.* at 2489. A credit card's stored information, unlike a smartphone's, is *intended* to be read by third parties. That is the only reason for its existence. There is simply no basis to extend *Riley* to digital information that literally has no purpose other than to be provided to others to facilitate financial transactions.

In sum, the Court holds that reading the magnetic strip on the back of a credit, debit, or gift card is not a "search" for Fourth Amendment purposes.[3] Accordingly, the Court will deny the defendant's motion to suppress.

IT IS ORDERED:

1. The defendant's motion to continue (filing 39) is denied.

2. The defendant's motion for leave to file a motion to suppress out of time (filing 40) is granted.

3. The defendant's motion to suppress (filing 41) is denied.

---

[3] For the sake of completeness, the Court notes two additional points. First, had this matter been decided after a hearing, the government would almost certainly have been able to show that the evidence would have inevitably been discovered. *See generally United States v. McManaman,* 673 F.3d 841, (8th Cir. 2012) (inevitable discovery doctrine applies when government proves a reasonable probability evidence would have been discovered by lawful means and there was a substantial alternative line of investigation at time of constitutional violation). Even without reading the magnetic strips, police were able to confirm the nature of the contraband by checking the information on the front of the cards with the financial institutions that purportedly issued them. *See* filing 1. And second, "evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional." *Herring v. United States,* 555 U.S. 135, 143 (2009). It is unlikely that the "search" conducted here was the sort of "deliberate, reckless, or grossly negligent conduct," or "recurring or systematic negligence," that the exclusionary rule is intended to deter. *Id.* at 144, 147. But the Court is not inclined to fully address these two issues on the record as it stands.

Dated this 24th day of October, 2014.

BY THE COURT:

_____
John M. Gerrard
United States District Judge